668 So.2d 1042 (1996)
HAWKINS SANDBLASTING, INC., Appellant/Cross-Appellee,
v.
JACKSONVILLE SHIPYARDS, INC., Appellee/Cross-Appellant.
No. 94-3108.
District Court of Appeal of Florida, First District.
February 15, 1996.
Rehearing Denied March 20, 1996.
*1043 Dennis J. Wall of Dennis J. Wall, P.A., Orlando, for Appellant/Cross-Appellee.
Courtney Wilder Stanton, Jacksonville; Dudley D. Allen of Wilbur & Allen, Jacksonville, for Appellee/Cross-Appellant.
BENTON, Judge.
Hawkins Sandblasting, Inc. (Hawkins) seeks reversal of the judgment requiring it to indemnify Jacksonville Shipyards, Inc. (JSI) for money JSI paid as a result of an injury one Billy W. Parrish apparently suffered. The corrected final order awards "defense costs including legal fees of $78,000.00 and defense costs of $14,760.21, and $35,000 in reimbursement for the settlement made with Billy W. Parrish." Hawkins also contends, assuming liability arguendo, that the amount of attorneys' fees which it was ordered to reimburse was excessive, and that no award of prejudgment interest on attorneys' fees was authorized. On cross-appeal, JSI argues that the trial court erred in ruling (on motion for summary judgment) that the Longshore and Harbor Workers' Act immunizes Hawkins against noncontractual liability arising out of Mr. Parrish's claimed injury, and that the amount of attorneys' fees indemnified was too low. We affirm the judgment, rendering the cross-appeal moot, except as to the amount of attorneys' fees.

*1044 Contractual Claim Maritime

When the steamship American Kestrel put in for repairs at JSI's shipyard, JSI subcontracted with Hawkins to perform certain work on the vessel. At the time of the alleged injury, Mr. Parrish was standing on a dock at the shipyard, as part of the team assembled to paint the American Kestrel. He was under Hawkins' supervision, but as an employee of Consolidated Industrial Skills Corporation (CISCO), with whom Hawkins had contracted for labor. As his employer, CISCO had obtained insurance to secure any benefits to which Mr. Parrish might become entitled under the Longshore and Harbor Workers' Act, 33 U.S.C. § 901 et seq. (1988).
Because "maintaining a vessel at a marina on a navigable waterway is substantially related to traditional maritime activity," Sisson v. Ruby, 497 U.S. 358, 367, 110 S.Ct. 2892, 2898, 111 L.Ed.2d 292 (1990), a contract to paint the superstructure of a ship already launched "relates to ships and vessels, masters and mariners, as the agents of commerce," Kossick v. United Fruit Co., 365 U.S. 731, 736, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961), in a way that brings disputes arising under the contract within the admiralty jurisdiction of the federal courts. See, e.g., Sirius Ins. Co. (UK) Ltd. v. Collins, 16 F.3d 34 (2d Cir.1994) (holding events on shore gave rise to claim under maritime contract); Smith v. United States, 980 F.2d 1379 (11th Cir.1993) (deciding indemnity claim by JSI against CISCO). By virtue of the saving to suitors clause, 28 U.S.C. § 1331(1) (1949), however, state courts have concurrent jurisdiction over most maritime claims.
The circuit court had jurisdiction to decide the contractual indemnity claim at issue here.
However, maritime law, not state law, is applicable even though the action is brought in a state court. Wilburn Boat Company v. Fireman's Fund Insurance Company, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955); Still v. Dixon, 337 So.2d 1033 (Fla. 2nd DCA 1976).
Peninsular Fire Ins. Co. v. Wells, 438 So.2d 46, 48 n. 1 (Fla. 1st DCA), review dismissed, 443 So.2d 980 (Fla.1983); Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917).
Aside from its inability to provide a remedy in rem for a maritime cause of action, th[e United States Supreme] Court has said that a state, "having concurrent jurisdiction, is free to adopt such remedies, and to attach to them such incidents, as it sees fit" so long as it does not attempt to make changes in the "substantive maritime law." Red Cross Line v. Atlantic Fruit Co. 264 U.S. 109, 124, 44 S.Ct. 274, 277, 68 L.Ed. 582.
Madruga v. Superior Court of State of California in and for San Diego, 346 U.S. 556, 561, 74 S.Ct. 298, 301, 98 L.Ed. 290 (1954).
Stated another way, the "saving to suitors" clause allows state courts to entertain in personam maritime causes of action, but in such cases the extent to which state law may be used to remedy maritime injuries is constrained by a so-called "reverse-Erie" doctrine which requires that the substantive remedies afforded by the states conform to governing federal maritime standards. (Citations omitted).
Hughes v. Unitech Aircraft, Inc., 662 So.2d 999, 1000 (Fla. 4th DCA 1995) (quoting Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 222-223, 106 S.Ct. 2485, 2494, 91 L.Ed.2d 174 (1986)). The circuit court also had jurisdiction to decide the tort claims, which grew out of events that took place on land or an "extension of land." See Victory Carriers, Inc. v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971); Gaspard v. Amerada Hess Corp., 13 F.3d 165 (5th Cir.1994).

JSI Not Proven Negligent
The work Hawkins undertook entailed use of a high pressure industrial pressure washer or "water blaster" in preparation for painting. When water under pressure dislodged an improperly connected hose, Mr. Parrish was injured, or so he alleged in a complaint he filed against JSI in circuit court. His complaint asserted that JSI negligently assembled, inspected, and maintained the industrial pressure washer. On the third day of a jury trial, before he rested his case, he settled with JSI for $35,000, and the jury was discharged. JSI admitted *1045 neither negligence nor injury when it settled with Mr. Parrish.
Later the trial "resumed" before the judge, on the issues remaining between JSI and Hawkins, whom JSI had brought in as a third-party defendant before the trial began. As an affirmative defense to JSI's crossclaim, Hawkins alleged "active negligence" on JSI's part. But JSI admitted, and the trial court found, no negligence of any kind. The record contains no evidence that JSIas opposed to Hawkinsattached the hose that came off, or otherwise contributed in any way to any injury Mr. Parrish may have suffered.
Some two years after the trial began, the trial court entered a corrected final order requiring Hawkins to indemnify JSI for attorneys' fees and costs incurred in resisting the Parrish claim, for the amount paid to settle the claim, and for prejudgment intereston fees, costs, and settlement amount alike. The trial court found liability on the basis solely of a purchase order fixing the terms of the contract between JSI and Hawkins. See, e.g., West v. Kerr-McGee Corp., 765 F.2d 526 (5th Cir.1985). While expressly not finding JSI negligent, the trial court concluded that negligence on JSI's part, if any, would not defeat JSI's entitlement to full indemnification. After Hawkins appealed, we relinquished jurisdiction for determination of the amount of prejudgment interest, which the trial court set out in an amended final order and judgment.
Among the terms and conditions of the purchase order which embodied the contract between JSI and Hawkinsas to which the trial court found Hawkins "was on full notice" were the following:
24. LIABILITY FOR ON-SITE PERFORMANCE: If Seller is to perform on-site services under this purchase order then Seller agrees to take all precautions necessary, special or otherwise, and shall be responsible for the safety of the work hereunder and shall maintain all protection necessary. All work shall be done at Seller's risk and all damage and injury to any work, property or person of Buyer, its employees, Seller, or its employees, or of others, shall be indemnified by Seller as provided in "Article 19" hereof. Seller further agrees that, for on-site services performed under this purchase order, he assumes full and complete responsibility as an employer for complying with the requirements of the Occupational Safety and Health Act of 1970 (Public Law 91-596) and indemnifies the Buyer from any and all actions concerning these services which may be in violation thereof.
and
19. INDEMNIFICATION AND INSURANCE: Seller shall be liable for the loss of or damage to Buyer-furnished property while such property is in Seller's possession. Seller agrees to carry fire and extended insurance coverage on all such property and to indemnify and save Buyer harmless from any and all judgments, orders, awards, costs and expenses, including attorney's fees and also claims on account of damage to property or bodily injury (including death) which may be sustained by Seller, Seller's employees, Buyer, Buyer's employees or third persons, arising out of or in connection with work performed for Buyer on premises occupied or under control of Buyer or Seller. If this order requires the Seller's employees to perform work or service on the premises of the Buyer, or any vessel at any location, or any job site away from the Seller's premises, then the Seller will furnish the Buyer Certificates of Insurance providing coverage for:
Workmen's Compensation, including the Longshoreman's and Harbor Workers Compensation Act, Employers Liability, Comprehensive General Liability and Automobile liability coverages with limits of Liability for bodily injury of not less than $100,000 per person and $300,000 per occurrence and property damage liability of not less than $100,000 per occurrence.
Hawkins contends that nothing in its agreement with JSI protects JSI from the consequences of JSI's own negligence. But it is clear these provisions require indemnification *1046 if JSI in no way contributed to an injury that Hawkins caused.
The record does not support Hawkins' essential factual premisethat negligence by JSI contributed to an injury Mr. Parrish sustained. We therefore decline the invitation to try to untangle the snarl of admiralty cases the parties have brought to our attention in support of their respective contentions on the question whether their contract requires Hawkins to indemnify JSI even against JSI's own negligence. Compare Randall v. Chevron U.S.A., Inc., 13 F.3d 888, modified, 22 F.3d 568 (5th Cir.), cert. denied sub nom. Sea Savage, Inc. v. Chevron U.S.A., Inc., ___ U.S. ___, 115 S.Ct. 498, 130 L.Ed.2d 408 (1994); Lanasse v. Travelers Insurance Co., 450 F.2d 580, 584 (5th Cir. 1971), cert. denied sub nom. Chevron Oil Co., California Company Division v. Royal Insurance Co., 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972); Lavergne v. Chevron U.S.A., Inc., 782 F.Supp. 1163, 1172 (W.D.La. 1991), aff'd mem., 980 F.2d 1444 (5th Cir. 1992); Hoyne v. Peter Kiewit Sons, Inc., 407 F.Supp. 761, 762 n. 1 (N.D.Ill.1976), with Texas Eastern Transmission Corp. v. McMoRan Offshore Exploration Co., 877 F.2d 1214 (5th Cir.), cert. denied sub nom. Marathon Oil Co. v. McMoRAN Offshore Exploration Co., 493 U.S. 937, 110 S.Ct. 332, 107 L.Ed.2d 321 (1989); Lirette v. Popich Brothers Water Transport, Inc., 699 F.2d 725 (5th Cir.1983); Todd Shipyards Corp. v. Turbine Service, Inc., 674 F.2d 401 (5th Cir. 1982), cert. denied sub nom. Sentry Insurance v. Todd Shipyards Corp., 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982) and Travelers Insurance Co. v. Todd Shipyards Corp., 459 U.S. 1036, 103 S.Ct. 448, 74 L.Ed.2d 603 (1982); Corbitt v. Diamond M. Drilling Co., 654 F.2d 329, 332 (5th Cir.1981) (discussing the applicability of United States v. Seckinger, 397 U.S. 203, 212 n. 17, 90 S.Ct. 880, 886 n. 17, 25 L.Ed.2d 224 (1970) in admiralty); Capozziello v. Brasileiro, 443 F.2d 1155 (2d Cir.1971); Moses-Ecco Co. v. Roscoe-Ajax Corp., 320 F.2d 685 (D.C.Cir. 1963).
While there was testimony that the water blaster looked like one of JSI's (because of the way it was painted), no record of a rental to Hawkins could be found. Other testimony established that JSI's practice was to deliver water blasters and their hoses to work sites separately. The evidence did not disclose who originally attached the hose. Under Hawkins' supervision, moreover, the water blaster was started, then turned off for adjustments and restarted, before the hose flew off. See generally, e.g., Smith v. Shell Oil Co., 746 F.2d 1087, 1094 (5th Cir.1984) ("The indemnity provision is triggered by a finding of concurrent negligence."). Our conclusion that JSI has a contractual right to indemnification moots its claim that the trial court erred in failing to find a right to reimbursement on other theories.

Damages Include Attorneys' Fees Incurred in Defending Claims
Hawkins undertook "to indemnify and save [JSI] harmless from any and all judgments, orders, awards, costs and expenses, including attorney's fees" that JSI might incur on account of injuries to persons or property arising in the course of the work Hawkins agreed to perform (at least absent JSI's own negligence). Unreimbursed legal fees JSI incurred in defending the Parrish claim are part of the damages to which it is entitled in consequence of Hawkins' breach of the indemnity agreement. See City of Boston v. S.S. Texaco Texas, 773 F.2d 1396, 1400-01 (1st Cir.1985). There was no award of costs or fees incurred in establishing entitlement to indemnification. See Nathaniel Shipping, Inc. v. General Elec. Co., 920 F.2d 1256, 1269, modified on other grounds, 932 F.2d 366 (5th Cir.1991). In ordering Hawkins to reimburse JSI for "defense costs including legal fees," the circuit court made an award of damages which included attorneys' fees in order fully to indemnify JSI for expenditures JSI was required to make in defending against the Parrish claim.
Hawkins contends the amount of attorneys' fees was excessive because two lawyers worked together in JSI's defense and billed for "telephone calls back and forth between the two lawyers, and the receipt and review of memoranda [and letters] back and forth." But the trial court took evidence, including expert testimony, on these matters and discounted the "lodestar amount" significantly *1047 (20%) for just the sort of duplication complained of. On cross-appeal, JSI complains about the reduction. Neither party has demonstrated error in the learned trial judge's findings as to the amount of attorneys' fees JSI reasonably incurred in defending Mr. Parrish's claim.

Restitutio in Integrum
While conceding that an award of prejudgment interest is the rule rather than the exception in admiralty, see Couch v. Cro-Marine Trans., Inc., 44 F.3d 319, 327 (5th Cir.1995), Hawkins argues that "peculiar circumstances" require that moratory interest not be awarded here. Citing Reeled Tubing, Inc. v. M/V Chad G, 794 F.2d 1026 (5th Cir.1986), Hawkins contends that it was error to award prejudgment interest because there was "a genuine dispute over a good faith claim ... in a mutual fault setting" and "the damages award was substantially less than the amount claimed by plaintiff." We have rejected the contention that the record establishes mutual fault. The amount of the settlementits reasonableness has not been questionedlike the amount of the costs has not been a matter of dispute. But it is true that JSI sought $97,500 in attorneys' fees and was awarded only $78,000, with the result that its total recovery was approximately 13% less than what it sought.
The view that these circumstances preclude an award of prejudgment interest under maritime law cannot, however, be squared with the recent decision in City of Milwaukee v. Cement Division, National Gypsum Co., ___ U.S. ___, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995), where the Court held "that neither a good-faith dispute over liability nor the existence of mutual fault justifies the denial of prejudgment interest in an admiralty collision case." Id. at ___, 115 S.Ct. at 2097. While the Court's holding was limited to maritime collisions (a ship did damage to and was damaged by the wharf at which it was moored), the Court categorically rejected the suggestion that unliquidated damages precluded an award of prejudgment interest.
In this case, the City asks us to characterize two features of the instant litigation as sufficiently unusual to justify a departure from the general rule that prejudgment interest should be awarded to make the injured party whole. First, the City stresses the fact that there was a good faith dispute over its liability for respondents' loss. In our view, however, this fact carries little weight. If interest were awarded as a penalty for bad faith conduct of the litigation, the City's argument would be well taken. But prejudgment interest is not awarded as a penalty; it is merely an element of just compensation.
The City's "good faith" argument has some resonance with the venerable common-law rule that prejudgment interest is not awarded on unliquidated claims (those where the precise amount of damages at issue cannot be computed). If a party contests liability in good faith, it will usually be the case that the party's ultimate exposure is uncertain. But the liquidated/unliquidated distinction has faced trenchant criticism for a number of years. Moreover, that distinction "has never become so firmly entrenched in admiralty as it has been at law." Moore-McCormack Lines, Inc. v. Richardson, 295 F.2d 583, 592 (CA2 1961). Any fixed rule allowing prejudgment interest only on liquidated claims would be difficult if not impossible to reconcile with admiralty's traditional presumption. Yet unless we were willing to adopt such a rulewhich we are not uncertainty about the outcome of a case should not preclude an award of interest.
In sum, the existence of a legitimate difference of opinion on the issue of liability is merely a characteristic of most ordinary lawsuits. It is not an extraordinary circumstance that can justify denying prejudgment interest.
Id. at ___, 115 S.Ct. at 2096-97 (footnotes omitted). That the present case involves an indemnification claim rather than a marine collision affords no meaningful basis for distinguishing it. The "peculiar circumstances" on which Hawkins relies amount to nothing more than "the existence of a legitimate difference of opinion." By financing the litigation and settlement of the Parrish claim, moreover, JSI in effect made funds available *1048 to Hawkins which Hawkins might otherwise have been obligated to borrow at interest.
Hawkins contends that Florida law, instead of general maritime law, should supply the measure of damages in the present case, as surrogate federal law. This argument is not without force, inasmuch as both JSI and Hawkins are land-based contractors, and the dispute between them may be viewed as a local one. Florida adheres to "the venerable common-law rule that prejudgment interest is not awarded on unliquidated claims," id. at ___, 115 S.Ct. at 2096; see Lumbermens Mut. Cas. Co. v. Percefull, 653 So.2d 389 (Fla.1995) a rule which, if applied here, would require reversal of so much of the judgment as awards prejudgment interest on attorneys' fees.
But disputes between marine contractors and subcontractors can cloud the rights of vessels. Contractors and subcontractors alike, see Marine Coatings of Alabama, Inc. v. United States, 932 F.2d 1370 (11th Cir. 1991), may assert maritime liens. The same considerations which dictate uniform rules of decision in other areas of maritime law persuade us that the federal supreme court's recent pronouncement on prejudgment interest should be given effect here, in keeping with the requirement "that the substantive remedies afforded by the states conform to governing federal maritime standards." Offshore Logistics, 477 U.S. at 223, 106 S.Ct. at 2494.
Affirmed.
MICKLE and VAN NORTWICK, JJ., concur.